J-A27043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS TINSEL | : | |
| | : | |
| Appellant | : | No. 266 EDA 2020 |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008735-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS TINSEL | : | |
| | : | |
| Appellant | : | No. 268 EDA 2020 |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008737-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS TINSEL | : | |
| | : | |
| Appellant | : | No. 269 EDA 2020 |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008749-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

|                                            |   |                                        |
|--------------------------------------------|---|----------------------------------------|
| v.                                         | : |                                        |
|                                            | : |                                        |
|                                            | : |                                        |
|                                            | : |                                        |
| DENNIS TINSEL                              | : |                                        |
|                                            | : |                                        |
| Appellant                                  | : | No. 271 EDA 2020                       |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008751-2015

|                                            |   |                                        |
|--------------------------------------------|---|----------------------------------------|
| COMMONWEALTH OF PENNSYLVANIA               | : | IN THE SUPERIOR COURT OF               |
|                                            | : | PENNSYLVANIA                           |
|                                            | : |                                        |
| v.                                         | : |                                        |
|                                            | : |                                        |
|                                            | : |                                        |
|                                            | : |                                        |
| DENNIS TINSEL                              | : |                                        |
|                                            | : |                                        |
| Appellant                                  | : | No. 272 EDA 2020                       |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008753-2015

|                                            |   |                                        |
|--------------------------------------------|---|----------------------------------------|
| COMMONWEALTH OF PENNSYLVANIA               | : | IN THE SUPERIOR COURT OF               |
|                                            | : | PENNSYLVANIA                           |
|                                            | : |                                        |
| v.                                         | : |                                        |
|                                            | : |                                        |
|                                            | : |                                        |
|                                            | : |                                        |
| DENNIS TINSEL                              | : |                                        |
|                                            | : |                                        |
| Appellant                                  | : | No. 273 EDA 2020                       |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008755-2015

|                                            |   |                                        |
|--------------------------------------------|---|----------------------------------------|
| COMMONWEALTH OF PENNSYLVANIA               | : | IN THE SUPERIOR COURT OF               |
|                                            | : | PENNSYLVANIA                           |
|                                            | : |                                        |
| v.                                         | : |                                        |
|                                            | : |                                        |
|                                            | : |                                        |

J-A27043-20

DENNIS TINSEL                          :
                                       :
                        Appellant      :        No. 274 EDA 2020

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008757-2015

BEFORE:   STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED:  FEBRUARY 26, 2021**

Appellant, Dennis Tinsel, appeals from the order entered December 17, 2019, that dismissed his first petition filed under the Post Conviction Relief Act ("PCRA")[1] without a hearing.  We affirm.

On November 10, 2016, a jury convicted Appellant of "seven counts each of aggravated assault,[] attempted murder,[] and possessing instruments of crime,[] as well as one count of criminal conspiracy to commit murder.[2]  Following the recording of the verdict, the trial court found [Appellant] guilty of possession of a firearm.[3]" ***Commonwealth v. Tinsel***, No. 772 EDA 2017, unpublished opinion at 1-2 (Pa. Super. filed July 27, 2018). These convictions arise from the following facts:

> On June 22, 2015, on the 700 block of East Hilton Street in the Kensington section of Philadelphia, [an area where Appellant had been mugged hours before,] multiple gunshot blasts emanated from a sawed-off shotgun being wielded by Keith Warren.  As

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

[2] 18 Pa.C.S. §§ 2702(a)(1), 901(a), 907, and 903(c).

[3] ***Id.*** § 6105.

- 3 -

Warren marched down the street he was seen by Basil Elliott, who immediately fled toward F Street. Warren began firing the shotgun in Elliott's direction, completely disregarding the children playing on E[ast] Hilton Street that day. Basil Elliott was shot in his liver and kidney. In addition, ten-year-old Dale Koch, three-year-old Yesenia Nieves and nine-year-old Katrina Vega, were shot while playing in an inflatable pool situated on the sidewalk. Christina Koch, Dale and Yesenia's mother, was struck with a shotgun blast as she rushed to shield the children. Shawn Jones was shot in the back of his head while fleeing, and Anthony Miles was shot in the back of his neck, fracturing it.

Warren fled while still holding the black shotgun with the pistol grip[.] As he ran toward Madison Street after the shooting on Hilton Street, he was seen running through a vacant lot located at G and Madison Street by a local delivery man, Nestor Nieves. . . . While sitting in his car, he saw Warren running in his direction. Warren was carrying a shotgun and had nothing covering his face. . . .

Police searched the area and collected numerous pieces of ballistic evidence including the shotgun, which was found in the abandoned lot at the corner of G and Madison Streets. Police traced the shotgun to Devin Tindal (hereinafter Devin), [Appellant's] brother.

Devin [later] testified that [Appellant] sold drugs in the area of G and Hilton Streets and had done so for ten years. Devin also testified that on March 1, 2012, [Appellant] had him illegally purchase a shotgun and ammunition. Devin identified the shotgun recovered by police at G and Madison Streets as the weapon he purchased for [Appellant]. Devin never again saw the shotgun after he purchased it for his brother. . . . He also gave police the names of several persons, including Sarah Reyes, [Appellant's] paramour. Devin told police that he believed that the shotgun was being stored at Reyes' home.

Reyes, a long-time resident of the 700 block of Hilton Street in Philadelphia, came to know [Appellant] because he ran one of two competing drug dealing operations on Hilton Street and came there every day to sell drugs. At some point she entered into an intimate relationship with him. During the relationship, Reyes was introduced to [Appellant's] co-defendant Warren, who [Appellant] said was his cousin.[]

In June, 2015, the relationship between Reyes and [Appellant] became strained because [Appellant] and Reyes' twenty-six-year-old daughter Charlene began "messing" around. . . .

Subsequent thereto, Philadelphia Police Detective Kenneth Rossiter came to [Reyes's] home to interview her. During the interview, she told the detective about the problems she was having with [Appellant] and identified a photograph of him. Reyes gave an incorrect description of Warren and did not give the detective Warren's name because she was afraid for her family's safety.

Later, Reyes went to a police station and told police that Warren, who she called "Cuz," was the person she saw shooting on June 22, 2015. . . .

Alena Abramova, [Appellant's] fiancée, received a telephone call from [Appellant] on June 22, 2015, during which he told her that he had been attacked. In a text, Abramova asked [Appellant] to promise that he would not do anything "to get hurt more." [Appellant] responded with, "it's already done."

*Id.* at 2-5 (internal brackets omitted).

On June 22, 2015, the Commonwealth filed seven complaints against Appellant. On July 7, 2015, Appellant turned himself into police and was formally charged that same day; he was denied bail and remained confined thereafter. On August 22, 2015, the trial court ordered the Commonwealth to provide discovery, including "copies of materials, exhibits, statements and transcripts obtained through, generated by, or marked as an exhibit for the Philadelphia County Indicting Grand Jury . . . to defense counsel[.]" Order – Disclosure of Indicting Grand Jury Materials, 8/22/2015. On August 27, 2015, seven indictments were filed against Appellant, and, on September 14, 2015, the Commonwealth filed seven informations against Appellant.

At a discovery hearing on October 7, 2015, the Commonwealth failed to provide discovery, and the matter was continued until January 22, 2016, with a trial date scheduled for March 14, 2016. On January 22, 2016, the Commonwealth again failed to provide discovery, and the action was continued until February 2, 2016, with a trial date set for April 4, 2016. Short Certificate, 1/22/2016.[4] According to the certified docket, on February 2, 2016, the court determined that discovery was complete, and the case was continued, with the trial date still set for April 4, 2016, although no written order appears in the certified record. N.T., 10/21/2016, at 6-7. On April 4, 2016, co-defendant Warren's attorney requested a continuance, and trial was rescheduled for September 26, 2016.

On May 3, 2016, Appellant filed a motion to quash, a motion to sever, and a motion for bail modification, all of which were denied. The record thereafter includes an order dated July 13, 2016, denying Appellant's "Motion For Release Pursuant To Rule 600"; however, no such motion appears on the certified docket nor in the certified record.

On September 23, 2016, Appellant filed a Motion to Dismiss Pursuant to Pa.R.Crim.P. 600(A) ("Rule 600 Motion") that appears on the certified docket and in the certified record; the motion contended that the Commonwealth had

---

[4] There is no indication on the continuance order nor the certified docket that Appellant waived his speedy trial rights pursuant to Pa.R.Crim.P. 600.

violated Pa.R.Crim.P. 600(A).[5]  Rule 600 Motion, 9/23/2016, at ¶ 2.  The Rule 600 Motion pleaded that, as of the date that it was filed, Appellant had been incarcerated in excess of one year, *id.*, but it did not provide any calculations as to how long the case had been pending nor address whether the Commonwealth had exercised due diligence in bringing Appellant's case to trial.  ***See generally id.***  The Commonwealth did not file an answer to the Rule 600 Motion.  On October 21, 2016, the trial court denied the Rule 600 Motion, N.T., 10/21/2016, at 10, but ordered Appellant to be released on bail.[6]  Order, 10/21/2016.[7]

Appellant's trial commenced on November 2, 2016.  The jury convicted Appellant of the aforementioned charges.  ***Tinsel***, No. 772 EDA 2017, at 1-2.

_____

[5] Pa.R.Crim.P. 600(A)(2) lists five "time periods" by which "[t]rial shall commence[.]"  The only one applicable to Appellant is Pa.R.Crim.P. 600(A)(2)(a):  "Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed."

[6] The trial court simply stated, "600(a) is denied."  N.T., 10/21/2016, at 10. It did not calculate the adjusted run date and excludable and/or excusable time nor determine the final Rule 600 run date – *i.e.*, the date by which trial must commence.  The concepts of "adjusted run date," "excludable time," and "excusable time" are discussed in more detail below.

[7] The Commonwealth asserts in its brief:  "After hearing arguments from counsel, the court found that Commonwealth exercised due diligence in attempting to bring [Appellant] to trial, therefore, denying counsel's motion under Rule 600(A). (N.T. 10/21/16, 6-10)." Commonwealth's Brief at 18 n.3. However, pursuant to our review of the notes of testimony for October 21, 2016, we find no explicit statement by the trial court finding that the Commonwealth exercised due diligence.  ***See generally*** N.T., 10/21/2016. At best, such a finding can be implied by the trial court's denial of the Rule 600 Motion.  ***Id.*** at 10.

- 7 -

Appellant filed a direct appeal challenging the sufficiency of the evidence for all of his convictions, *id.* at 7, and this Court affirmed his judgment of sentence on July 27, 2018. *Id.* at 2. He did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

On August 2, 2018, Appellant filed his first, *pro se*, timely PCRA petition. On August 14, 2018, the PCRA court appointed counsel to represent Appellant, and PCRA counsel filed an amended PCRA petition.

On September 18, 2019, the PCRA court entered a notice of intent to dismiss all claims without a hearing pursuant to Pa.R.Crim.P. 907. Appellant filed a response. The response does not request to amend the PCRA petition.

On December 17, 2019, the PCRA court dismissed Appellant's petition. On January 14, 2020, Appellant filed this timely appeal.[8]

Appellant presents the following issues for our review:

[I.] Whether the court erred in not granting relief on the PCRA petition alleging counsel was ineffective for the following [reasons]:

a. Appeal counsel failed to appeal ruling on rule 600A violation on 10/21/16.

b. Appeal counsel failed to appeal rulings denying motions for mistrial.

c. Appeal counsel failed to properly argue accomplice liability.

---

[8] The PCRA court did not order and Appellant did not file a statement of errors complained of on appeal. The PCRA court did not enter an opinion.

- 8 -

> d. Appeal counsel was ineffective for failing to argue denial of severance motion and denial of motion to quash.
>
> e. Trial counsel failed to present a witness.
>
> [II.] Whether the court was in error in denying the Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding trial counsel's ineffectiveness.

Appellant's Brief at 8 (answers omitted) (issues re-ordered to facilitate disposition).

"We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error." *Commonwealth v. Medina*, 209 A.3d 992, 996 (Pa. Super. 2019) (quoting *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018)), *reargument denied* (July 17, 2019).

Appellant broadly contends that "the PCRA court was in error in not granting relief on the issue that counsel was ineffective." Appellant's Brief at 21.

> Counsel is presumed to be effective.
>
> To overcome this presumption, a PCRA petitioner must plead and prove that: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> A failure to satisfy any of the three prongs of this test requires rejection of a claim of ineffective assistance.

*Medina*, 209 A.3d at 1000 (internal brackets, citations, and quotation marks omitted).

**Appellate Counsel**

Appellant first argues that "appellate counsel was ineffective for failing to raise crucial issues on appeal." Appellant's Brief at 22.

*Rule 600 Motion*

Appellant specifically maintains that appellate counsel "failed to appeal [the trial court's] ruling on Rule 600(A) violation of 10/21/16." ***Id.***

We first consider whether the underlying legal claim is of arguable merit. ***Medina***, 209 A.3d at 1000.

> Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.

***Commonwealth v. Peterson***, 19 A.3d 1131, 1135 (Pa. Super. 2011) (*en banc*) (citations omitted).

"By the terms of Rule 600, the Commonwealth must bring a defendant to trial within 365 days from the date upon which a written criminal complaint is filed." ***Commonwealth v. Barbour***, 189 A.3d 944, 947 (Pa. 2018). This first step "provides the **mechanical run date**." ***Commonwealth v. Bethea***, 185 A.3d 364, 371 (Pa. Super. 2018) (emphasis in original) (citation omitted). "A defendant, however, is not automatically entitled to discharge under Rule 600 where trial starts more than 365 days after the filing of the complaint." ***Commonwealth v. Roles***, 116 A.3d 122, 125 (Pa. Super. 2015).

> [T]he Rule 600 run date may be adjusted pursuant to the computational directives set forth in Subsection (C) of the Rule. For purposes of the Rule 600 computation, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence." [Pa.R.Crim.P.] 600(C)(1). "Any other periods of delay," including those caused by the defendant, "shall be excluded from the computation." ***Id.***

***Barbour***, 189 A.3d at 947.

The Commonwealth filed seven criminal complaints against Appellant on June 22, 2015; 365 days thereafter was June 21, 2016 – *i.e.*, the mechanical run date. Pa.R.Crim.P. 600(A)(2)(a); ***Bethea***, 185 A.3d at 371. Appellant's trial commenced on November 2, 2016, more than four months after the mechanical run date.

Nevertheless, our inquiry does not end there. Appellant only takes issue with the time period prior to the trial court's denial of his Rule 600 Motion on October 21, 2016.[9] However, the only period of time where there exists a colorable argument that the Commonwealth was not acting with due diligence, ***see Barbour***, 189 A.3d at 947, was when it failed to provide discovery to Appellant in a prompt fashion thereby resulting in multiple continuances – *i.e.*, between the trial court ordering the transmission of discovery to the defense on August 22, 2015 and when the trial court declared discovery complete on February 2, 2016. Order – Disclosure of Indicting Grand Jury Materials,

---

[9] The time between June 22, 2015, and October 21, 2016, was 487 days.

- 11 -

8/22/2015; N.T., 10/21/2016, at 6-7.[10] The time between August 22, 2015, and February 2, 2016, was 164 days. This 164-day "period of delay . . . caused by the Commonwealth when the Commonwealth . . . failed to exercise due diligence" is the only time "included in the computation of the time within which trial must commence." Pa.R.Crim.P. 600(C)(1). "Any other period of delay" – whether caused by Appellant, his co-defendant, or the trial court – are "excluded from the computation." *Id.* This 164-day period is well below the 365-day threshold under Pa.R.Crim.P. 600(A).

Accordingly, had appellate counsel raised a challenge to the denial of the Rule 600 Motion on direct appeal, this Court would have found that claim to be meritless. As the underlying claim is meritless, Appellant cannot establish ineffective assistance of appellate counsel for failing to raise this claim. *Medina*, 209 A.3d at 1000.

### *Motions for Mistrial*

Next, Appellant alleges that his appellate counsel was ineffective for failing to appeal rulings denying his three motions for mistrial. Appellant's Brief at 25. The first motion for a mistrial was "based upon prosecutorial misconduct in presenting two witnesses that were not on their list of witnesses." *Id.* The second motion for a mistrial was made "where witness Sara[h] Reyes said she was approached by someone on the street with some

---

[10] All subsequent delays were at the request of co-defendant's counsel and cannot be attributed to the Commonwealth.

grand jury testimony." *Id.* The third motion for a mistrial occurred "when the defense contended at trial that they were never turned over the statement of witness Reyes and that had it been turned over it could have been used to impeach her testimony." *Id.*

*Prosecutorial Misconduct*

Preliminarily, we note that Appellant initially mentions "two witnesses that were not on [the Commonwealth's] list of witnesses" but then only names Luz Garcia. Appellant's Brief at 25. We cannot speculate as to whom the other witness is and will therefore only address Appellant's challenge relating to Garcia. For that claim, Appellant particularly argues that the trial court "said it would colloquy each of the jurors to see if they knew" Garcia, thereby "put[ting] a spotlight on the witness." *Id.* Appellant hence takes issue with the trial court's denial of his motion for a mistrial based on its finding that there was "no manifest prejudice to [Appellant]." *Id.* (citing N.T., 11/3/2016, at 130-44).

We note that, on direct appeal, Appellant challenged the sufficiency of the evidence. However, neither the trial court opinion on direct appeal nor this Court's memorandum affirming his judgment of sentence on direct appeal make any reference whatsoever to Garcia's testimony – not in the factual summaries, the analysis of Appellant's sufficiency challenges, nor anywhere else. *See generally* Trial Court Opinion, dated July 31, 2017; *Tinsel*, No. 772 EDA 2017. Accordingly, the evidence to convict Appellant was sufficient

even without Garcia's testimony, and there is a reasonable probability that Garcia's testimony had no impact at all upon the outcome of this case. Ergo, even if appellate counsel had challenged the admission of Garcia's testimony on appeal and this Court had agreed that it should not have been admitted, we still would not have granted a new trial on that basis, as the evidence without Garcia's testimony still would have been sufficient to convict. Consequently, Appellant cannot establish the third prong of the test for ineffective assistance of counsel – *i.e.*, "prejudice, to the effect that there was **a reasonable probability of a different outcome**[.]" *Medina*, 209 A.3d at 1000. This ineffectiveness challenge thus lacks merit.

*Sarah Reyes -- Witness Intimidation*

Appellant states that "[t]he jury could properly infer that someone may have tried to intimidate [Reyes] or tr[ied] to improperly influence her." Appellant's Brief at 25. He continues that he requested that the denial of his motion for mistrial on this claim "be brought up on appeal and [appellate] counsel refused." *Id.*

However, in order to establish ineffective assistance of counsel, the underlying legal claim must be of arguable merit. *Medina*, 209 A.3d at 1000. We find that this underlying legal claim is not of arguable merit for the reasons discussed in the trial court opinion:

> Appellant claims that th[e trial c]ourt committed an abuse of discretion when it denied a motion for a mistrial proffered after a witness testified that someone had approached her on the street

- 14 -

and confronted her about her cooperation with authorities. N.T. 11/2/16, 138-149.[4]

> [4] It is noted that testimony regarding threats made by a third party to a witness are admissible to explain why a witness provided a false statement. ***See Commonwealth v. Ragan***, 645 A 2d 811, 824 (Pa 1994) (threats by third parties admissible to explain a witness's prior inconsistent statement); ***Commonwealth v. Carr***, 259 A 2d 165, 167 (Pa. 1969) (evidence of threat by third party admissible to explain prior inconsistent statement)

. . .

A mistrial is an "extreme remedy.. [that]...must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." ***Commonwealth v. Vazquez***, 617 A.2d 786, 787-88 (Pa. Super. 1992) (*citing* ***Commonwealth v. Chestnut***, 511 Pa 169, 512 A.2d 603 (Pa. 1986), and ***Commonwealth v. Brinkley***, 480 A.2d 980 (Pa. 1994)).

Th[e trial c]ourt properly denied Appellant's motion for a mistrial for several reasons. First, the testimony at issue did not implicate or accuse Appellant of being the source of the threat. Thus any prejudice inuring to Appellant was tangential at best. Second, Appellant's objection to the testimony was sustained and th[e trial c]ourt gave the jury a strong cautionary instruction directing it to disregard the testimony. N.T. 11/2/16, 149-150. This was sufficient to ameliorate any prejudice the testimony may have engendered. Juries are presumed to follow a court's instructions and such instructions have been found to cure any harm generated by an improper comment or inadmissible evidence. ***See, e.g.***, ***Commonwealth v. Bedford***, 50 A.3d 707, 713 (Pa. Super. 2012) (holding no error in denying mistrial where defendant successfully objected to hearsay testimony and judge instructed jury to disregard it; noting, "[w]e can presume the jury followed the court's instructions and defendant is unable to show otherwise") (***citing Commonwealth v. Mollett***, 5 A.3d 291, 313 (Pa. Super. 2010) ("Juries are presumed to follow a court's instructions.")); ***see also Commonwealth v. Means***, 773 A.2d 143, 157 (Pa. 2001) ("A pillar upon which our system of trial by jury is based is that juries are presumed to follow the instructions of the court.") (citation omitted). . . . Accordingly, Appellant's claim with respect to this issue [was properly] denied.[6]

[6] Moreover, there is no evidence that the Commonwealth was even aware of this evidence or that it elicited said testimony. Rather, it appears that witness uttered the threat *sua sponte*.

Trial Court Opinion, dated July 31, 2017, at 12-14. Accordingly, assuming appellate counsel had raised a claim on direct appeal that the trial court erred by denying Appellant's motion for a mistrial based on evidence of witness intimidation of Reyes, said challenge would have failed. As the underlying legal claim consequently is meritless, Appellant is unable to establish the first prong of the ineffective assistance of counsel test, and this entire ineffectiveness claim based on alleged witness intimidation hence fails. *Medina*, 209 A.3d at 1000.

*Sarah Reyes – Impeachment*

Appellant raised another claim related to Reyes's testimony. Specifically, he alleged that appellate counsel was ineffective for failing to argue that the trial court erred by failing to grant his motion for a mistrial based upon the Commonwealth's failure to turn over Reyes's statements to the defense. Appellant's Brief at 26.

Again, Appellant cannot establish that the underlying claim has arguable merit, for the reasons set forth in the trial court opinion:

Appellant asserts that a mistrial should have been granted because the testimony was unduly prejudicial and Commonwealth failed to give the defense discovery materials about the incident thereby committing a ***Brady*** violation.[5]

[5] ***Brady v. Maryland***, 373 U S. 83 (1963)

. . .

- 16 -

With respect to Appellant's **Brady** claim, to establish a **Brady** violation, an appellant must prove three elements:

[1] the evidence [at issue] was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued.

**Commonwealth v. Paddy**, 15 A3d 431, 450 (Pa. 2011) (citation omitted).

Appellant should be denied with respect to this claim because he cannot show that the evidence was favorable to his defense or that the Commonwealth's failure to turn the evidence in question over to him prejudiced him. Moreover, . . . the [trial c]ourt sustained Appellant's objection and cautioned the jury to ignore the evidence thereby negating any harm the failure to provide the evidence to the defense may have caused. Accordingly, Appellant's claim with respect to this issue [was properly] denied.

Trial Court Opinion, dated July 31, 2017, at 12-14. Consequently, assuming appellate counsel had raised a claim on direct appeal that the trial court erred by denying Appellant's motion for a mistrial based on discovery issues related to Reyes's statements, such a claim would have failed. As the underlying legal claim is meritless, Appellant is unable to establish the first prong of the ineffective assistance of counsel test, and, ergo, this entire ineffectiveness claim based on the Commonwealth's alleged failure to provide Appellant with Reyes's statements fails. **Medina**, 209 A.3d at 1000. For these reasons, all of Appellant's issues concerning appellate counsel's failure to raise on appeal any questions concerning the trial court's denial of Appellant's motions for mistrials lack merit.

*Accomplice Liability*

Appellant further insists that appellate counsel "failed to properly argue accomplice liability[,]" noting that "[t]he jury requested to hear the elements for accomplice liability after four days of deliberation."  Appellant's Brief at 26. He continues that "[c]riminal convictions cannot rest upon the theory of Conspiratorial Liability when such theory is not provided for expressly in our crime code[,]" explaining that, "[i]n **Commonwealth v. Knox**, 629 PA 467, 105[] A.3d 1194 (2014) the Pennsylvania Supreme Court rejected a broad common-law approach to the issue of accomplice liability in favor of the plain language of Section 306 of the Crimes Code."  ***Id.*** at 27.

We again find that the underlying legal claim lacks arguable merit based upon the well-reasoned analysis of the trial court opinion:

> A coconspirator is necessarily also an accomplice.  ***See*** [***Commonwealth v.***] ***Hennigan***, 753 A.2d [245,] 254 [(Pa. Super. 2000)] ("The criminal intent necessary to establish accomplice liability is identical to the criminal intent necessary to establish conspiracy"); ***Commonwealth v. Allen***, 625 A.2d 1266, 1268 (Pa. Super. 1993) ("Proof of a conspiracy requires a showing that the defendant reached an agreement with a coconspirator to commit a crime.  No such showing is necessary to find accomplice liability, as mere rendition of aid is sufficient"). Accordingly, [relief was properly] denied with respect to this claim because even if the Commonwealth failed to prove that Appellant was Warren's accomplice, it established that Appellant was a co-conspirator of Warren, and thus, fully culpable for Warren's nefarious acts.

Trial Court Opinion, dated July 31, 2017, at 12.  As this underlying claim lacks merit, Appellant has failed to establish the first prong of the ineffectiveness

test, and his entire claim related to accomplice liability merits no relief. *Medina*, 209 A.3d at 1000.

## Denial of Severance Motion

Appellant next argues that appellate counsel "was ineffective for failing to argue denial of severance motion[.]" Appellant's Brief at 28. He continues: "The Commonwealth had insufficient evidence to support the conclusion that Appellant was related to the shooting incident involving Keith Warren and the severance motion should have been granted." *Id.*

However, this Court previously concluded that the evidence was sufficient to support Appellant's conviction for criminal conspiracy. *Tinsel*, No. 772 EDA 2017, at 8-9. Accordingly, contrary to Appellant's assertion, the evidence was sufficient to support the conclusion that Appellant was involved in "the shooting incident involving Keith Warren[.]" *Compare* Appellant's Brief at 28 *with Tinsel*, No. 772 EDA 2017, at 8-9. Consequently, the underlying legal claim is meritless, and appellate counsel cannot be found ineffective for failing to raise it on appeal. *Medina*, 209 A.3d at 1000.

## Denial of Motion to Quash

Appellant next argues that "[a]ppellate counsel was ineffective for failing to appeal the court's denial of Appellant's Motion to Quash because the evidence presented by the prosecution at Appellant's preliminary hearing failed to establish a prima facie case." Appellant's Brief at 29. However, an adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a prima facie case at an appellant's preliminary hearing.

*Commonwealth v. Haney*, 131 A.3d 24, 36, (Pa. 2015); *Commonwealth v. Lee*, 662 A.3d 645, 650 (Pa. 1995). Consequently, assuming appellate counsel had raised this claim, it would have been found to be meritless, and "counsel will not be deemed ineffective for failing to raise a meritless claim[.]" *Commonwealth v. Spotz*, 896 A.2d 1191, 1211 (Pa. 2006); *see also Medina*, 209 A.3d at 1000.

### Trial Counsel

Next, Appellant states that trial counsel was ineffective for failing to present Jasmine Vicente as a witness. Appellant's Brief at 30. According to Appellant:

> Jasmine would have testified that on June 22, 2015, Appellant picked her up at her mo[ther]'s house early that morning. They drove to G St. to get coffee. That's when Appellant was attacked. He got in his truck bleeding and tried to drive and almost crashed the car. He pulled over, sent a text to his sons' mo[ther] saying what just happened. Jasmine took Appellant's phone and started texting Appellant's sons[' mother]. Appellant took his phone and told Jasmine he wasn't going to the hospital and that he had to get his son form the babysitter. Jasmine drove to NY where Appellant's [maternal aunt] lives where they stayed until the following afternoon before driving back to Philadelphia.

*Id.* at 30-31.

> In establishing whether defense counsel was ineffective for failing to call witnesses, Appellant must . . . prove (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) **the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial**.

*Medina*, 209 A.3d at 998 (emphasis added).

In the current case, the evidence presented at trial establishing Appellant's guilt was overwhelming. As this Court wrote:

> [T]he connection between Warren and [Appellant] was demonstrated at trial. Even without evidence tying Warren to [Appellant]'s drug dealing enterprise, [Appellant] referred to Warren as his cousin, and Warren fired a shotgun belonging to [Appellant] in an area where [Appellant] was mugged hours before. A reasonable jury could, and in fact did, conclude that the relationship between the two suggested an agreement with shared criminal intent. . . . Further, it is well-established that actions by a co-conspirator taken while acting in furtherance of the conspiracy can be attributed to a defendant. . . . Here, Warren's actions on Hilton Street would constitute that overt act. . . .
>
> In addition, the evidence outlining [Appellant's] actions and admissions prior to and following the incident was more than sufficient to prove [Appellant's] guilt and participation in the crime beyond a reasonable doubt. Not only did he make a threat after he was beaten, following that beating, he, *inter alia*: 1) admitted to his fiancée that he could not let the incident pass and that "it" had already happened; 2) asked his brother to lie about the purchase of the shotgun because it had been "used,"; 3) fled to New York; 4) altered his usual schedule; and 5) asked his fiancée to collect and discard bullets and other items. Given this evidence, it is clear that the Commonwealth presented enough circumstantial evidence in addition to the evidence of motive to prove [Appellant's] guilt beyond a reasonable doubt.

*Tinsel*, No. 772 EDA 2017, at 9-10 (citation and internal brackets omit) (some additional formatting).

Additionally, Jasmine's[11] testimony would have been inconsistent with the Commonwealth's evidence. The Commonwealth never alleged that Appellant performed the overt act of shooting the firearm himself, nor did it

---

[11] As Appellant refers to Ms. Vicente as "Jasmine" throughout his brief, we have chosen to use her first name, as well, for consistency.

claim that Appellant necessarily conspired in-person with Warren. Furthermore, Jasmine's testimony would have aligned with the Commonwealth's narrative that Appellant fled to New York. *Tinsel*, No. 772 EDA 2017, at 10. Accordingly, had Jasmine testified, the outcome of the case would not have changed, and, consequently, the absence of Jasmine's testimony was not "so prejudicial as to have denied the defendant a fair trial." *Medina*, 209 A.3d at 998. As Appellant cannot establish prejudice, he cannot establish that his trial counsel was ineffective for failing to call Jasmine as a witness. *Id.*[12] Ergo, Appellant has failed to establish any of his ineffective assistance of counsel claims – against either trial and appellate counsel.

### Evidentiary Hearing

Finally, Appellant contends that "the PCRA court erred in denying [his] PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition." Appellant's Brief at 20. As Appellant is not entitled to relief on any of the above PCRA challenges, he is likewise not entitled to an evidentiary hearing on any of those claims. *Medina*, 209 A.3d at 999-1000 (citing *Commonwealth v. Postie*, 200 A.3d 1015, 1022 (Pa. Super. 2018) (*en banc*) ("A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue

---

[12] Appellant does not argue cumulative prejudice from individual claims. *See* Appellant's Brief at 20-32; *Commonwealth v. Hutchinson*, 25 A.3d 277, 318–19 (Pa. 2011) ("[w]here a claimant has failed to prove prejudice as the result of any individual errors, he cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulation requires a different analysis").

- 22 -

concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings.")).

* * *

For the reasons given above, we conclude that Appellant's issues raised on appeal are meritless. Having discerned no error of law, we affirm the order below. ***See Medina***, 209 A.3d at 996.

Order affirmed.

Judge Stabile files a concurring memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/21